# Constitutionality of Bill Establishing American Folklife Center in the Library of Congress

A bill creating an American Folklife Center in the Library of Congress would violate the separation of powers by vesting the Librarian of Congress, a congressional officer, with executive functions.

The bill would also violate the Appointments Clause by permitting certain members of the Board of Directors of the American Folklife Center to be appointed by members of Congress, the Board of Directors of the Smithsonian Institution, and the Librarian of Congress.

December 31, 1975

MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

This is in response to the telephone request of Mr. Barry Roth of your staff for the views of the Department of Justice on the constitutional aspects of the above-entitled enrolled bill, with which the Department has had no prior contact.

The bill contains findings to the effect that it is appropriate and necessary for the federal government to support research and scholarship in American folklife, and that the encouragement and support of American folklife is an appropriate matter of concern to the federal government. H.R. 6673, 94 Cong., 1st Sess. § 2 (1975). The bill then sets up an American Folklife Center in the Library of Congress. *Id.* § 4(a). The Center would be under the direction of a Board of Trustees composed as follows:

(1) four members appointed by the President [of the United States];

(2) four members appointed by the President pro tempore of the Senate . . . and four members appointed by the Speaker of the House of Representatives . . . ;

(3) the Librarian of Congress;

(4) the Secretary of the Smithsonian Institution;

(5) the Chairman of the National Endowment for the Arts;

(6) the Chairman of the National Endowment for the Humanities; and

(7) the Director of the Center.

*Id.* § 4(b).

The Librarian of Congress is empowered to appoint a Director of the Center after consultation with the Board. *Id.* § 4(f). The Director would be the chief executive officer of the Center, and would have responsibility for carrying out the

functions of the Center, subject to the direction of the Board and the general supervision of the Librarian. *Id.* § 4(g).

Section 5 sets forth the functions which the Librarian of Congress is authorized to perform under the Act (subsection (a)) and provides that they are to be carried out through the Center (subsection (b)).

In our view the bill presents two important constitutional problems: the first involves the doctrine of the separation of powers, which requires that statutes assigning executive duties must be administered by the Executive Branch and not by congressional officers, such as the Librarian of Congress; the second is the principle that functions of an executive nature must be carried out by officers of the United States appointed in compliance with the requirements of Article II of the Constitution.

## I.

Article I of the Constitution vests the legislative power of the United States in the Congress. Article II vests the executive power of the United States in the President and directs him to "take care that the laws be faithfully executed." This means that statutes creating functions of an executive nature are to be carried out by the Executive Branch of the government under the supervision of the President, and not by congressional agencies. This basic constitutional consideration, of course, does not preclude the performance of internal congressional functions and of congressional services by congressional officers. The bill, however, goes far beyond that. Some of the functions to be performed by the Librarian of Congress through the American Folklife Center have, it is true, a substantial nexus with the Library of Congress (*see, e.g.*, H.R. 6673, § 5(a)(2)–(5))—though even as to these it is open to question whether they truly come within the ambit of an institution whose primary purpose is to give library and reference service to Congress. This, however, cannot under any circumstances be said of the contract authority set forth in section 5(a)(1), empowering the Librarian to

> enter into, in conformity with Federal procurement statutes and regulations, contracts with individuals and groups for programs for the—
>
> (A) initiation, encouragement, support, organization, and promotion of research, scholarship, and training in American folklife;
>
> (B) initiation, promotion, support, organization, and production of live performances, festivals, exhibits, and workshops related to American folklife;
>
> (C) purchase, receipt, production, arrangement for, and support of the production of exhibitions, displays, publications, and presentations (including presentations by still and motion picture films,

and audio and visual magnetic tape recordings) which represent or illustrate some aspect of American folklife; and

(D) purchase, production, arrangement for, and support of the production of exhibitions, projects, presentations, and materials specially designed for classroom use representing or illustrating some aspect of American folklife.

These activities do not appear to be related to any internal congressional function or service. While it is true that a few other functions of the Library, such as the provision of books and sound production records to the blind and other physically handicapped persons, 2 U.S.C. § 135a, are not directly so related either, they are at least a logical adjunct of the historical library function which the venerable institution has provided. While one may permit this for reasons of practicality and historical prescription, the extension of the institution's activities into the entirely unrelated field of funding folklife training and performances is a change of qualitative nature. The extension would thus have been made first, from an institution which serves the Congress as a library; to one which serves the public in the same capacity; and finally, to one which serves the public in capacities entirely unrelated either to congressional service or to libraries. This last extension moves the Library of Congress into areas now occupied by the National Endowment for the Arts, and the National Endowment for the Humanities (both executive agencies).

## II.

The second constitutional problem in the bill concerns the manner in which ten members of the Board of Trustees of the American Folklife Center are to be appointed.

Under the bill, the Board would perform important functions in the administration of the statutory program; its responsibilities would not be limited to advice. For example, it would give direction, not merely advice, to the Director of the Center, an official appointed by the Librarian (H.R. 6673, § 4(g)(1)); and certain functions of the Center could be undertaken only if the Board considers them "appropriate" (*id.* § 5(a)(5), (6)). Again, certain types of contracts may be entered into only with the concurrence of the Board. *See, e.g.*, *id.* §§ 6(a), 7(a)(3), 7(a)(8). Under section 7(a)(7) a majority of two-thirds of the members of the Board may even waive otherwise applicable bonding requirements.

The Board therefore performs functions of an executive nature. Its activities are not merely of an advisory nature or limited to a single task of limited duration, as is the case with so-called ad hoc officers. *See The Constitution of the United States: Analysis and Interpretation*, S. Doc. No. 92-82, at 523 (1973).

It follows that the functions of the members of the Board of Trustees can be performed only by persons who are officers of the United States and appointed in the manner prescribed by Article II, Section 2, Clause 2 of the Constitution, namely, by the President by and with the advice of the Senate, or with congressional authorization by the President alone, or the courts of law, or the heads of departments.

The bill fails to comply with these constitutional requirements with respect to the following members of the Board:

> (a) The eight members appointed by the President pro tempore of the Senate and the Speaker of the House, respectively;

> (b) The Secretary of the Smithsonian Institution, who is appointed by the Board of Regents of the Smithsonian Institution (20 U.S.C. § 44), which cannot be viewed as the equivalent of a department head within the meaning of Article II; and

> (c) The Director of the Center who would be appointed by the Librarian of Congress who similarly does not have the status of a department head within the meaning of Article II of the Constitution.

A similar problem arose in connection with the legislation establishing the Japan-United States Friendship Commission (Japan-United States Friendship Act, Pub. L. No. 94-118, 89 Stat. 603 (1975)) and in the Arts and Artifacts Indemnity Act (Pub. L. No. 94-158, 89 Stat. 844 (1975)). There, as indicated in the President's signing statements, Statement on Signing the Japan-United States Friendship Act, 2 *Pub. Papers of Pres. Gerald R. Ford* 1718, 1719 (Oct. 21, 1975); Statement on Signing the Arts and Artifacts Indemnity Act, 2 *id.* 1990, 1991 (Dec. 22, 1975), it was possible to obviate the difficulty by considering the members appointed by the President pro tempore and the Speaker to be advisory, nonvoting members. This approach does not appear to be available here, because the improperly appointed members would constitute ten out of seventeen of the Board's membership.

For the above reasons, it is our view that the provisions of this legislation are contrary to the strict provisions of the Constitution. It must be acknowledged, however, that in the area of cultural and educational affairs, the separation of powers may not have been strictly observed. Despite the fact that they do not constitute as drastic a departure from the constitutional requirements as the present bill, those provisions of the Library of Congress statute which authorize the provision of specific services to the public must be considered a technical anomaly. Indeed, it is probably demonstrable that from an early date the primary function of the Library of Congress has been public service rather than congressional assistance. Similarly, the makeup of the Smithsonian Institution—if that is

to be regarded as a federal agency, a point which is subject to some dispute—contravenes the constitutional text.

Complete acceptance of this historical practice runs the risk of inviting further transfers to the Library of Congress of cultural and educational functions; and perhaps of encouraging more serious encroachments upon executive prerogatives through the assignment of entirely different functions to the General Accounting Office. Moreover, it appears from our experience with the Japan-United States Friendship Commission and the Arts and Artifacts Indemnity Act, discussed above, that only a presidential veto directed at this practice will suffice to call the attention of Congress to the problem involved. Given the very nature of all of these cultural and educational proposals, it may be vain to await an occasion for a presidential veto more propitious than the present. Nonetheless, in light of the historical practice, we think the President can responsibly sign the present legislation with the expression of his serious reservation concerning the constitutional propriety of placing such functions outside the Executive Branch.[*]

ANTONIN SCALIA
*Assistant Attorney General*
*Office of Legal Counsel*

---

[*] Editor's Note: President Ford signed H.R. 6673 into law as the American Folklife Preservation Act, Pub. L. No. 94-201, 89 Stat. 1129 (Jan. 2, 1976). As advised, he expressed "serious reservations concerning the constitutional propriety of placing the functions to be performed by the Center outside the executive branch and the assignment of executive duties to officers appointed by Congress." Statement on Signing the American Folklife Preservation Act, 1 *Pub. Papers of Pres. Gerald R. Ford* 6, 6 (Jan. 3, 1976). "However," said President Ford, "given historical practice and custom in the area of cultural and educational affairs and the potential of H.R. 6673 to enrich the cultural life of the Nation, I am granting my approval to the measure." *Id.* at 6-7. The American Folklife Center remains a part of the Library of Congress today. *See* 20 U.S.C. §§ 2101 *et seq.*

A recent D.C. Circuit decision reached a different conclusion regarding the separation of powers and Appointments Clause issues addressed in this opinion, holding that the Library of Congress is part of the Executive Branch and that the Librarian is a department head, at least with respect to the Copyright Office. *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1342 (D.C. Cir. 2012).